RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0251p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

WILLIAM CROSKEY,

　　　　　　　　*Plaintiff-Appellant,*

　　　　*v.*

No. 06-1386

BMW OF NORTH AMERICA, INC. and BAYERISCHE
MOTOREN WERK AKTIENGESELLSCHAFT (BMW
AG),

　　　　　　　　*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-73747—Nancy G. Edmunds, District Judge.

Argued: January 29, 2008

Decided and Filed: July 10, 2008

Before: MERRITT, DAUGHTREY, and MOORE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Donald M. Fulkerson, Westland, Michigan, for Appellant. Jeffrey T. Gorcyca,
BOWMAN & BROOKE, Troy, Michigan, for Appellees. **ON BRIEF:** Donald M. Fulkerson,
Westland, Michigan, Marc E. Lipton, LIPTON LAW CENTER, Southfield, Michigan, for
Appellant. Jeffrey T. Gorcyca, Thomas P. Branigan, BOWMAN & BROOKE, Troy, Michigan, for
Appellees.

_____

## OPINION

_____

　　　MERRITT, Circuit Judge. This is an appeal from a jury verdict in an automotive products
liability action in favor of defendants BMW of North America, Inc., a BMW distributor, and
Bayerische Motoren Werk Aktiengesellschaft (BMW AG), the manufacturer. Plaintiff was injured
when a plastic radiator piece on a 1992 BMW failed, releasing hot radiator fluid. On appeal,
plaintiff alleges numerous errors at trial concerning evidentiary rulings and a jury instruction, most
of which we reject. But, because the district court erroneously ruled that evidence of similar
incidents could not be used by plaintiff to prove negligence in the design of the car by BMW, we
reverse the district court and remand for a new trial. A recent Michigan case decided after the

1

district court tried this case indicates that similar-incidents evidence in this case may be admitted to prove design defect.

## I. Facts and Procedural History

The facts relevant to this appeal are few and straightforward. Plaintiff William Croskey was severely burned on July 5, 2000, when the plastic "neck" on the radiator of his girlfriend's 1992 BMW failed, spewing scalding radiator fluid on him when he opened the hood to add fluid. The car had a history of overheating and had been serviced by both BMW and non-BMW mechanics for the problem. Croskey brought an action for defective design, negligence and gross negligence in Michigan federal court. Federal jurisdiction is based on diversity and the parties agree that Michigan law controls the substantive law on products liability actions.

Over defendants' objection, the plaintiff was permitted at trial to offer two alternative negligence theories: (1) that defendant BMW AG, the manufacturer, knew, or should have known, at the time of the car's manufacture in 1991 that the plastic used in the radiator neck would fail over time because the plastic degraded after long-term exposure to the hot temperatures in the radiator (traditional "design defect" claim) and (2) that both BMW AG, the manufacturer, and BMW NA, the distributor, became aware at some point after 1991 that the plastic radiator neck might deteriorate and fail, giving rise to a duty to warn the public about such failure. Both parties filed several motions *in limine* prior to trial that are the subject of this appeal.

The district court issued a written ruling on January 10, 2006, denying defendant's motion in limine to exclude evidence of substantially similar incidents. In the written order, the district court ruled that plaintiff could introduce evidence of similar incidents after the date of the car's manufacture in 1991 to prove his theory based on the failure to warn about a latent defect. The district court, however, failed to put an end date on the use of similar incidents evidence; and the plaintiff referred to several similar incidents that occurred *after* July 5, 2000, the date of plaintiff's accident. On a motion for reconsideration by defendants, the district court revisited the ruling and agreed with defendants that evidence of similar incidents *after* the date of plaintiff's accident were improper because they were irrelevant to the notice defendants had *before* July 5, 2000, concerning any alleged defect in the radiator neck. Relying on *Gregory v. Cincinnati, Inc.*, 450 Mich. 1, 538 N.W.2d 325 (1995), and *Ray v. Rheem Textile Sys., Inc.*, No. 225934, 2002 WL 433157 (Mich. Ct. App. Mar. 19, 2002), the court modified its ruling to allow evidence of similar incidents occurring between 1991, the date of the car's manufacture, and July 5, 2000, the date of plaintiff's accident to prove the failure to warn claim only.

Trial commenced the next day, but the first jury lasted only through opening arguments when a mistrial was granted on defendants' motion. The district court decided that it had erred in its pretrial ruling admitting evidence of similar accidents that happened *after* the date of plaintiff's accident (July 5, 2000). As the post-accident incidents had been extensively discussed in the plaintiff's opening argument in the first trial, the district court agreed with defendants that admitting the evidence prejudiced defendants and the jury would not be able to overlook the incidents even with a corrective instruction. So, the court granted defendants' request for a mistrial.

After further motions and discussions, the district court ruled that plaintiff could put on evidence of similar incidents only to prove his "failure to warn" negligence theory and could not use such evidence to prove the "design defect" negligence theory. The court also limited the admissible incidents to those occurring before plaintiff's accident in July 2000, those that were "substantially similar" to the incident at issue and only those of which BMW had notice. Plaintiff appealed this ruling on a number of grounds, but primarily he claims that the district court erred in not admitting evidence of similar incidents to prove existence of a "design defect" and limiting the incidents admitted to those occurring before his accident in July 2000.

A new trial commenced the next day and lasted 14 days. The jury found no liability on the part of either defendant. Specifically, it found the manufacturer, BMW AG, not negligent in the design or manufacture of the radiator and not negligent for failing to warn of a defect in the radiator. It also found BMW NA, the seller, not negligent for failing to warn of a defect.

## II. Evidence of Similar Incidents

As explained below, the district court should not have limited the admission of the similar incidents evidence solely to prove the failure to warn claim. Under Michigan and federal law, the evidence may also be admitted to prove design defect and negligence. While evidence of substantially similar incidents is always viewed on a case-by-case basis and may be excluded for a number of evidentiary reasons, there is no blanket prohibition under Michigan or federal law against admitting such evidence on plaintiff's claims of design defect and negligence. *See* C. Wright & K. Graham, *Fed. Prac. & Proc.* § 5170 (explaining historical reasons for the reluctance to admit evidence of similar incidents, but noting that "The only arguments for excluding evidence of other incidents that retain their cogency today are those involving problems of prejudice and [jury confusion.]").

Underpinning products liability law is the duty of manufacturers to design their products so as to eliminate any unreasonable risk of foreseeable injury. The plaintiff's complaint alleges three causes of action in his complaint: (1) defect in design or manufacture that existed at the time the car left defendants' possession; (2) negligence[1] and (3) gross negligence. Plaintiff claims that the defendants are negligent because they knew that the plastic used on the radiator "neck" could become brittle and break over time (the "defect"), exposing consumers to the possibility of severe burns if the consumer was standing near the car with the hood up when the neck failed and allowed hot liquid to escape from the radiator. Plaintiff also claims that alternative designs were available that could have been used to minimize the type of radiator neck failure that led to plaintiff's injuries. For the purposes of putting on proof, plaintiff's first two causes of action are virtually the same – they are both negligence claims that require plaintiff to prove that defendants negligently designed or manufactured a product and put it into the stream of commerce.

Plaintiff's third negligence theory contends that even if defendants did not know the product was defective when it left defendants' possession, defendants became aware later of the defect and were under a duty to warn consumers. This third theory of negligence arises from plaintiff's allegation that even if the radiator neck was not "defective" when it left defendants' possession due to either a design defect or a manufacturing defect, over time defendants became aware of the problem in older model cars and had a duty to warn customers about the problem in BMWs manufactured with this type of plastic radiator neck.

A negligence cause of action recognizes that manufacturers have a duty to use reasonable care to design and produce a product that is reasonably safe for its intended, anticipated and reasonably foreseeable use. A negligence claim in a products liability action looks to the manufacturer's *conduct* and not the mere existence of a product's defect to determine whether the manufacturer's conduct was reasonable under the circumstances. The plaintiff must show that the manufacturer failed to manufacture its product so as to eliminate any unreasonable risk of foreseeable injury.

---

[1]There are at least three distinct theories under the "negligence" cause of action in a products liability context: (1) design defect; (2) manufacturing defect and (3) failure to warn consumers about a "defective" product of which the manufacturer has notice. The term "defective" is a term of art in product liability cases in Michigan. A product is "defective" if it has either a manufacturing defect or a design defect. *Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 682, 365 N.W.2d 176 (1984).

A claim of "negligence" under Michigan products liability law may be established through several different theories. Plaintiff is entitled to plead and try to prove negligence under any of the alternative theories of negligence. The primary issue in this appeal is plaintiff's efforts to prove negligence under a theory of design defect.[2] To prove a design defect under Michigan law, a plaintiff must show that the product was "not reasonably safe for its foreseeable uses" and that a "risk-utility analysis" favored a safer design. Under this approach, a plaintiff must show that (1) the product was not reasonably safe when it left the control of the manufacturer; and (2) a "feasible alternative production practice was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users." MCL 600.2946(2); *see also Gregory*, 450 Mich. at 11, 538 N.W.2d at 329. Plaintiffs may use both direct and circumstantial evidence to prove a design defect claim.

A risk-utility balancing test invites the trier of fact to consider the alternatives and risks faced by the manufacturer in designing the product and to determine whether in light of certain factors "the manufacturer exercised reasonable care in making the design choices it made." *Prentis v. Yale Mfg. Co.*, 421 Mich. 670, 688, 365 N.W.2d 176 (1984). Under Michigan's risk-utility test, a plaintiff must show:

> (1) that the severity of the injury was foreseeable by the manufacturer;
> (2) that the likelihood of the occurrence of the injury was foreseeable by the manufacturer at the time of distribution of the product;
> (3) that there was a reasonable alternative design available;
> (4) that the alternative available design was practicable;
> (5) that the available and practicable reasonable alternative design would have reduced the foreseeable risk of harm posed by the defendant's product; and
> (6) that the omission of the available and practicable reasonable alternative design rendered the defendant's product not reasonably safe.

*Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 738 (6th Cir. 2000) (citing *Reeves v. Cincinnati, Inc.*, 176 Mich. App. 181, 187-88, 439 N.W.2d 326, 329 (1989)). Plaintiff may demonstrate a defendant's negligence under these factors through a "battle of the experts," with both parties introducing expert testimony concerning the efficacy and practicability of using a certain design versus an alternative design. Or the plaintiff may demonstrate that defendants knew or should have known about the risk of the radiator neck failures by introducing evidence of similar incidents involving the same neck piece.

---

[2] Under an alternative negligence theory, plaintiff also claims that defendants were negligent in failing to warn consumers about the radiator neck defect once they became aware of the defect. A negligent failure to warn renders a product defective even if the design chosen does not render the product defective. *Gregory v. Cincinnati Inc.*, 450 Mich. 1, 11, 538 N.W.2d 325, 329 (1995). To establish a prima facie case of failure to warn, a plaintiff must prove: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the defendant's breach was a proximate cause of the plaintiff's injuries; and (4) the plaintiff suffered damages. *Id.* A manufacturer has a duty to warn if it has actual or constructive knowledge of a danger, which is not obvious to users, and the manufacturer failed to use reasonable care in informing users of the danger or the facts tending to make the condition dangerous. *See also* MCL 600.2948(2) (statute provides in pertinent part that "[a] defendant is not liable for failure to warn of a material risk that is or should be obvious to a reasonably prudent product user or a material risk that is or should be a matter of common knowledge to persons in the same or similar position as the person upon whose injury or death the claim is based in a product liability action.") Unlike the evidentiary ruling as to plaintiff's theory of negligence based on design defect, the district court allowed in evidence of post-manufacture radiator neck failures to prove the failure to warn claim and that ruling is not at issue in this appeal. *Defendants* claim in their appeal brief that it was error for the district court to allow evidence of post-manufacture neck failures in the failure-to-warn context, but they prevailed below and did not file a cross-appeal on this issue, so it is not before us.

The Michigan Supreme Court stated the general rule concerning the admissibility of other incidents in 1967:

> An issue as to the existence or occurrence of particular fact, condition, or event, may be proved by evidence as to the existence or occurrence of similar facts, conditions, or events, under the same, or substantially similar, circumstances.

*Savage v. Peterson Dist. Co.*, 379 Mich. 197, 202, 150 N.W.2d 804, 807 (1967) (quoting 32 *C.J.S. Evidence* § 584). The Court in *Savage* rejected defendant's argument that the trial court erred in admitting testimony of other consumers who experienced the same problems:

> It was proper to show these circumstantial facts as some evidence from which the jury might conclude that there was a pattern of causally connected carelessness at [defendant's] plant in manufacturing, for the market at the particular time, [defendant's] various types of mink food [the allegedly defective product].
>
> The proof of sale of such food, for the purpose mutually intended by the defendant manufacturer and the respective rancher-witnesses [the consumers], coupled with proof of a common, widespread and almost simultaneously damaging aftermath, rendered it admissible and its probative worth was for the jury. The foundation for its introduction was laid by the substantially corresponding time of feeding of [defendant's] mink food and the substantially corresponding effect of such feeding.

*Id.* at 206, 150 N.W.2d at 808-09; *see also Berry v. Fruehauf Trailer Co.,* 371 Mich. 428, 430, 124 N.W.2d 290, 291 (1963) (allowing similar prior-accident evidence to establish a dangerous or defective condition subject to requirement of similar conditions and reasonable proximity in time); *see also* 2 Wigmore, *Evidence* § 458 (Chadbourne rev. 1979) (stating a similar rule); 1 *McCormick on Evidence* § 200 (Kenneth S. Broun, ed., 6th ed. 2006).

A recent case in the Michigan Court of Appeals, decided after the district court's ruling in the trial below relied upon the *Savage* case to allow the introduction of similar incidents to prove negligence in a design defect case. *City of Madison Heights v. Elgin Sweeper Co.*, No. 266333, 2007 WL 1345866 (Mich. Ct. App. May 8, 2007), *appeal denied*, 480 Mich. 1002, 742 N.W.2d 352 (Dec. 27, 2007), *reconsideration denied*, 480 Mich. 1078, 744 N.W.2d 137 (Feb. 19, 2008). The opinion supports plaintiff's position that admitting evidence of substantially similar incidents is not prohibited under Michigan law. In *City of Madison Heights*, the City purchased a 1998 Elgin GeoVac Street Sweeper. In 2003, a fire destroyed a number of vehicles owned by the City of Madison Heights Public Works Department. Experts testified that the most likely cause of the fire was the GeoVac's electrical system and that the fire originated in the GeoVac's auxiliary engine compartment. The City claimed that a design defect in the GeoVac caused the fire. Discovery revealed seven other incidents of GeoVacs involved in fires between 1998 and 2004, all involving GeoVacs produced in 1997 or 1998. The City sought to introduce evidence of other fires involving the Elgin GeoVac Street Sweeper, and it filed an interlocutory appeal after the trial court granted defendant's motion in limine to exclude evidence of other fires involving Elgin GeoVac Street Sweepers.

The Michigan Court of Appeals concluded that two of the incidents were "substantially similar" to the incident giving rise to the City's allegations and that the trial court should have found the incidents relevant. The court of appeals found that the incidents occurring after the one at issue in *City of Madison Heights* had no relevance as to notice and was therefore inadmissible. The court went on to find that although admissible, the trial court did not err in excluding the incidents under

Michigan Rule of Evidence 403, which, like the Federal Rule of Evidence 403, allows the exclusion of relevant evidence on the grounds of prejudice, confusion or waste of time.[3]

Relying on the *Savage* case and *City of Madison Heights* (and the Michigan Supreme Court's refusal to review the case thereby letting the ruling stand), as well as the Federal Rules of Evidence, we hold it was error for the district court to make a blanket exclusion of all "other incidents" evidence by plaintiff to prove a negligence claim involving a design defect. Prior accidents must be "substantially similar" to the one at issue before they will be admitted into evidence. *Koloda v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373, 376 (6th Cir. 1983). Substantial similarity means that the accidents must have occurred under similar circumstances or share the same cause. *See Brooks v. Chrysler Corp.,* 786 F.2d 1191, 1195 (D.C. Cir. 1986) ("[e]vidence of prior instances is admissible on the issues of the existence of a design defect and a defendant's knowledge of that defect only if a plaintiff shows that the incidents 'occurred under circumstances substantially similar to those at issue in the case at bar' ") (quoting *McKinnon v. Skil Corp.,* 638 F.2d 270, 277 (1st Cir. 1981)); *Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322, 1332 (8th Cir. 1985) (same). The plaintiff has the burden of showing the substantial similarity between prior accidents and his own. *Lewy v. Remington Arms Co.,* 836 F.2d 1104, 1109 (8th Cir. 1988).

### III.  Other Evidentiary Rulings

Plaintiff also claims that it was an abuse of discretion for the district court to allow testimony concerning the number of BMWs sold with the same type of radiator as the subject product between 1994 (the date that BMW received notice of the first breakage of a radiator neck) and the date of plaintiff's accident on July 5, 2000. In the trial below, plaintiff was allowed to introduce evidence of similar incidents between 1991 and July 2000 to prove defendants were negligent in their failure to warn. On retrial plaintiff will also be allowed to put on similar incidents evidence to prove his design defect claim . To rebut that evidence, defendants should be allowed to put on evidence of the total number of cars sold during that same time with the same radiator neck piece to demonstrate the likelihood of failure of the radiator neck. Evidence of a small number of incidents versus the total number of similar model cars on the road has been permitted to refute evidence of prior accidents. A positive safety history may be admissible under certain conditions. *See McCormick On Evidence* § 200  (where a plaintiff has presented evidence of prior accidents to the jury, "it would seem perverse to tell a jury that one or two persons beside the plaintiff tripped on defendant's stairwell while withholding from them the further information that another thousand persons descended the same stairs without incident."); *see also* 2 Wigmore,  *Evidence* § 444  (Chadbourn rev. 1979) (leaving the decision whether this type of evidence is admissible to the trial judge).

Plaintiff argues that any number that includes all cars – new and old – is misleading as it skews the numbers in such a way as to make the percentage of neck failures artificially small because new cars are counted equally with the older cars that are more prone to the problem. The district court properly ruled that plaintiff would be able to cross-examine defendants on the statistics to help the jury understand that the plastic necks generally do not fail until after the cars have been on the road for a few years.

Plaintiff further claims that the district court erred in excluding the testimony of four non-BMW mechanics. Plaintiff contends that the mechanics' testimony was admissible to prove his

---

[3]Although not discussed at length below, we note that while state law governs substantive issues in diversity suits, federal law applies to procedural matters. *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 297 n.1 (6th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The Federal Rules of Evidence constitute procedural rules. *Id.* Therefore, except in limited circumstances not applicable herein, federal courts properly apply the Federal Rules of Evidence when ruling on the admissibility of evidence. In this case, however, both Michigan and federal law point to the same result.

design defect claim, including the dangerousness of the plastic neck, the magnitude of the risk and the poor performance under high temperatures. The district court originally denied defendants' motion in limine to exclude this testimony. The district court then reversed itself and excluded any introduction of "post-manufacture" evidence to show design defect. This was error. For the same reasons given above to allow the admission of similar incidents evidence to prove design defect, we direct the district court on retrial to allow the testimony of non-BMW mechanics to prove design defect only.

The district court properly did not allow the testimony of non-BMW mechanics to prove plaintiff's failure to warn claim because the mechanics were not BMW mechanics and they never reported the breakages they saw to BMW. Therefore their testimony could not be used to show that BMW was on notice by July 5, 2000, of a defect in the radiator neck. Accordingly, the district court properly excluded the testimony of the non-BMW mechanics as to the failure to warn claim.

Plaintiff also offered evidence of four other similar incidents with other BMWs to prove the failure to warn claim. To rebut this evidence, defendants introduced evidence regarding the dispositions of three of these cases to show bias and prejudice. Plaintiff moved in limine to exclude this evidence. Defendants opposed the motion, arguing that the evidence should be allowed because "the reason these witnesses are coming forward to testify is because they are unhappy with the settlement. They wanted more." Joint Appendix at 698. Defendants claim that the other-incidents witnesses "have an ax to grind" so defendants may show evidence of this bias at trial. *Id.* The district court agreed with defendants. Although settlement evidence is generally not admissible at trial, Federal Rule of Evidence 408 "does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness . . . ." Here, the motives of the similar-incident witnesses, all of whom had sued BMW and then settled, were relevant. Evidence of their settlements was offered to show that they might be biased against BMW because their settlement amounts were for less than they had requested. The settlement evidence was not offered as a defense to plaintiff's negligence claims against BMW, but instead was offered to show the state of mind of the witnesses. The district court's application of the Rule 408 "other purposes" exception to this evidence was therefore proper.

## IV. Jury Instructions

Plaintiff appeals the district court's failure to use the Michigan Model Jury Instructions for a claim of breach of implied warranty against the seller, BMW NA. Mich. Civ. Jury Ins. 25.21, 25.22. The district court properly ruled that the model rule was not appropriate in this case due to a change in the Michigan law in 1996 that requires a plaintiff to demonstrate negligence on the part of a non-manufacturing seller, like defendant BMW NA. Unlike the new 1996 statutory law, the traditional rule in Michigan was that a plaintiff did not have to show negligence on the part of the seller to recover under an implied warranty theory. The plaintiff needed to show only that the product was sold in a defective condition and the defect caused the plaintiff's injury. *Piercefield v. Remington Arms Co.*, 375 Mich. 85, 133 N.W.2d 129 (1965). The model instruction requested by plaintiff is based on the traditional law and does not require proof of negligence as to a non-manufacturing seller.

Under Michigan's 1996 statutory revision of tort law, a seller *who is not a manufacturer* is liable for harm allegedly caused by the product only if:

> (a) The seller failed to exercise reasonable care, including breach of any implied warranty, with respect to the product and that failure was a proximate cause of the person's injuries; or

(b) The seller made an express warranty as to the product, the product failed to conform to the warranty, and the failure to conform to the warranty was a proximate cause of the person's harm.

M.C.L. § 600.2947(6)(a), (b). The plain language of the statute indicates that the legislature did not intend failure to exercise reasonable care and breach of implied warranty to be separate products liability claims. Section 600.2947(6)(a) states that a non-manufacturing seller is not liable unless "[t]he seller failed to exercise reasonable care, including breach of any implied warranty, with respect to the product and that failure was a proximate cause of the person's injuries." Had the legislature intended this section to allow for two separate claims, it would have used the conjunction "or": "the seller failed to exercise reasonable care, *or* breached any implied warranty." The legislature's use of "including" indicates, as the district court ruled in this case, that breach of implied warranty claims are to be considered *a type* of reasonable care claim, not a separate claim. *See Coleman v. Maxwell Shoe Co.*, 475 F. Supp. 2d 685 (E.D. Mich. 2007). This conclusion is further supported by the last clause of § 600.2947(6)(a): "and that failure [to exercise reasonable care] was a proximate cause of the person's injuries." The legislature did not use the language "and that failure or breach of implied warranty was a proximate cause of the person's injuries." Clearly, the only claim envisioned by the legislature in § 600.2947(6)(a) was failure to exercise reasonable care.

Defendant BMW NA, the seller, correctly claims that the statute added an element of fault to the traditional test for breach of implied warranty. In other words, the plaintiff must show that the product was sold in a defective condition, the defect caused his injury, *and* the seller failed to exercise reasonable care. In contrast, plaintiff relies on cases that pre-date the 1996 amendment or otherwise rely on the former version of the law that does not contain a fault or negligence provision. *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 737 (6th Cir. 2000), is not to the contrary. It was decided in 2000, but the case was filed in 1996, *before* the Tort Reform Act took effect. At the time of the ruling, Section 600.2947(6) was not relevant to the case, and the Sixth Circuit did not discuss the statute. The Michigan Supreme Court case, *Piercefield v. Remington Arms Co.*, 375 Mich. 85, 133 N.W.2d 129 (1965), was decided before the Tort Reform Act was passed. While these cases explain the traditional rule for breach of implied warranty claims, they do not shed light on how the Tort Reform Act altered those claims.

Therefore, a plaintiff can recover against a non-manufacturing seller only if the seller fails to exercise reasonable care, or breaches an *express* warranty. Both the plain language of § 600.2947(6) and the legislative intent behind the statute show that non-manufacturing sellers cannot be held liable for damages due to breach of implied warranty, unless they failed to exercise reasonable care. Given the plain language of the statute, it is clear that the district court did not err in denying plaintiff's request to give the model jury instruction. It was necessary to modify the instruction to reflect the law as it applied to the seller, defendant BMW NA. As modified, the instruction includes reference to the breach of implied warranty, as requested by plaintiff, but also includes the negligence element as required by Michigan statutory law.

## Conclusion

Given the Michigan Court of Appeals' recent ruling in *City of Madison Heights* and the holdings of the Michigan Supreme Court about "other incidents" evidence over the years, we conclude that evidence of other relevant, similar incidents is admissible. Accordingly, we reverse the district court and remand for a new trial consistent with this opinion.