[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 21-11792

Non-Argument Calendar

————————————

DEBRA ROBERTS,

                                        Plaintiff-Appellant,

*versus*

CARNIVAL CORPORATION,
a Panamanian Corporation
d.b.a. Carnival Cruise Line,

                                        Defendant-Appellee.

—————————————

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:19-cv-25281-KMM

—————————————

Before LUCK, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff–Appellant Debra Roberts ("Roberts") appeals from the district court's grant of summary judgment to Carnival Corporation ("Carnival"). Roberts brought a two-count claim for negligence and strict products liability against Carnival after tripping over a fire safety door threshold on Carnival's cruise ship, *Vista*. She raises three issues on appeal: whether the district court erred in finding that (1) no evidence showed that Carnival had actual or constructive notice of the dangers posed by the threshold, (2) Carnival had no duty to warn of the danger posed by the threshold because it was open and obvious, and (3) no evidence showed that Carnival participated in, or approved of, the design of the threshold. For the following reasons, we affirm the district court's grant of summary judgment to Carnival.

## I.

On June 1, 2019, Roberts embarked on her sixth Carnival cruise. That same day, she took an elevator to deck 5, and, while

walking down the corridor to join her granddaughter, she tripped over a threshold. The threshold is a metal strip that runs across the width of the corridor to support the fire screen door. At the time of Roberts's fall, there was a red carpet in the center of the corridor adjacent to the threshold.

At her first deposition, Roberts stated that, as she walked down the corridor, she could see the silver, metal threshold while looking ahead, and that she knew it was a threshold. She also said that if she looked down at the floor while walking, she would have seen the threshold. She testified that, while walking down the corridor, her eyes were "focused straight ahead" on the ship's "distracting" Dreamscape lighting apparatus. She compared the Dreamscape lighting to a "lava lamp" with moving colors, shapes, and lights.

She acknowledged that she had seen other thresholds while on other cruise ships and that she knew she needed to adjust her gait around those thresholds. But she also said that this threshold "was different than any other threshold that [she had] ever encountered" because it was "larger" and because it had a partition running along the top. According to her expert witness, the partition was 8.5 inches wide, and "[t]he average height of the threshold relative to the floor surface was 0.764 [inches]." Roberts said that, even though she saw the threshold, she did not know that it was not a "solid threshold," and she was not aware of the threshold's size. She also said that she thinks she fell because her foot got caught in the partition. At her second deposition, she

acknowledged that, had she looked down at the thresholds while stepping over it, "[i]t would have been possible that [she] could have seen that it was different than any other threshold."

Roberts's trip and fall on *Vista* was not the first involving this same threshold.  Between July 3, 2016 and April 1, 2017, 12 passengers had tripped over this threshold on deck 5.  Carnival's corporate representative, Suzanne Vazquez, said that Carnival filed a warranty claim regarding the thresholds at the fire safety doors with the Fincantieri shipyard because those thresholds "seemed to be a tripping hazard for passengers."  In the fall of 2016, those thresholds were replaced, and that "initially seemed to reduce the incidents to almost zero."  Vazquez has testified that, "[w]ith respect to the fire safety doors and the threshold, Carnival does not participate in any way in the design or manufacture of those thresholds."  Carnival then, in early 2017, put down carpets next to the thresholds "which almost eliminated all of the incidents."[1]  There is no evidence that a trip or other accident involving the relevant threshold occurred in the 26 months between April 1, 2017 and Roberts's accident on June 1, 2019.

---

[1] Vazquez stated that she thought the carpet was placed near the threshold at issue "sometime in March or April" 2017, but the district court stated that it "was placed in February of 2017."

## II.

We review a district court's grant of summary judgment *de novo*, applying the same legal standards used by the district court. *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1311 (11th Cir. 2018). "Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Jurich v. Compass Marine, Inc.*, 764 F.3d 1302, 1304 (11th Cir. 2014). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). We view all facts and reasonable inferences in the light most favorable to the nonmoving party. *Jurich*, 764 F.3d at 1304.

## III.

Federal maritime law governs claims involving "alleged tort[s] committed aboard a ship sailing in navigable waters." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) (per curiam). A maritime carrier, such as Carnival, "is not liable to passengers as an insurer, but only for its negligence." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984). "In analyzing a maritime tort case, we rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (per curiam) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). Accordingly, "[t]o prevail on her

maritime negligence claims, . . . [Roberts] had to prove that (1) Carnival had a duty to protect her from a particular injury; (2) Carnival breached that duty; (3) the breach actually and proximately caused her injury; and (4) she suffered actual harm." *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020).

With respect to the duty element, maritime carriers owe a duty of "ordinary reasonable care under the circumstances" to its passengers. *Keefe*, 867 F.2d at 1322. Under this standard, plaintiffs must show, "as a prerequisite to imposing liability, that the carrier . . . had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Id.*; *see also Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1286 (11th Cir. 2015) ("[T]he maritime standard of reasonable care usually requires that the cruise ship operator have actual or constructive knowledge of the risk-creating condition."). Put simply, the carrier's liability "hinges on whether it knew or should have known about the" allegedly dangerous condition. *Keefe*, 867 F.2d at 1322; *see also Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020) ("[A] cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it."). Plaintiffs can show constructive notice in two ways. "*First*, a plaintiff can establish constructive notice by showing that a 'defective condition existed for a sufficient period of time to invite corrective measures.' *Second*, a plaintiff can show evidence of 'substantially similar incidents in

which conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Tesoriero*, 965 F.3d at 1178–79 (quoting *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019)).

Roberts has raised three issues on appeal. First, whether Carnival had actual or constructive notice of the dangers posed by the threshold. Second, whether the danger posed by the threshold was open and obvious. And third, whether evidence showed that Carnival participated in, or approved of, the threshold's design. Because we agree with the district court that Carnival did not have actual or constructive notice of the dangers posed by the threshold and that no evidence showed that Carnival approved of the threshold's design, we affirm the grant of summary judgment without reaching the question of whether the danger posed by the threshold was open and obvious.

A.    *The record evidence does not create a triable issue of fact over whether Carnival had actual or constructive notice of the dangers posed by the threshold.*

To establish the duty element of her maritime negligence claim, Roberts must show, "as a prerequisite to imposing liability," that Carnival "had actual or constructive notice of the risk-creating condition"—*i.e.*, that Carnival had actual or constructive notice of the danger posed by the threshold. *Keefe*, 867 F.2d at 1322. The district court determined that Roberts failed to show this for two reasons. First, no evidence showed that Carnival had notice of any risks associated with the Dreamscape lighting. Roberts attributed

her accident, in part, to the "distracting" Dreamscape lighting. Yet, as the district court noted, no record evidence shows that any other accident involving this threshold occurred due to the distracting Dreamscape lighting.[2]

Second, while 12 accidents involving this threshold had occurred during 3 years prior to Roberts's accident, the district court determined that no record evidence showed that Carnival had notice of dangers relating to the threshold under the conditions that existed *at the time of Roberts's accident.* Of those 12 accidents, 10 occurred in the second half of 2016 and 2 occurred in early 2017 (on February 24 and April 1, respectively). But, in the fall of 2016, the threshold was replaced after Carnival filed a warranty claim. And, in early 2017, Carnival placed a carpet near the threshold "to sort of define the area a little bit better."[3] As Carnival's corporate

_____

[2] Roberts concedes this point on appeal, stating that "even though [she] may not have had evidence of Carnival's notice of the danger of the Dreamscape lighting, [she] indisputably had evidence of Carnival's notice of the danger of the subject threshold, which was the actual object that [she] tripped over . . . ." For the reasons articulated below, we agree with the district court that Roberts did not produce sufficient evidence of Carnival's notice of the threshold's dangerousness at the time of Roberts's accident.

[3] Roberts notes that Carnival intended the red carpet to be only a short-term solution. We fail to see why that is relevant given that, after the red carpet was put down and the thresholds were replaced, the number of accidents involving the threshold at issue dropped precipitously. Vazquez also testified that, while Carnival was not "sure that [the red carpet] was going to work," "they recognized after a while that the carpet worked perfectly" and only one

representative noted, "the incidents went to almost zero" after these two changes were made. The district court agreed, noting that only one incident involving this threshold occurred after both changes were made (*i.e.,* the April 1, 2017 incident). In the intervening 26 months between the April 1, 2017 incident and Roberts's accident on June 1, 2019, the record showed no evidence of any accidents involving the threshold at issue. Accordingly, the 11 other accidents before the warranty claim and the placement of the carpet "did not occur under conditions substantially similar to those that existed . . . at the time of [Roberts's] incident."

The district court then concluded, for two reasons, that the April 1, 2017 incident standing alone was not sufficient to "put Carnival on notice that a dangerous condition existed in June of 2019." First, that incident occurred over two years before Roberts's accident, so it was "too remote" to have put Carnival on notice because, by June 2019, the threshold "appeared have been rendered safe by the placement of the carpet." Second, the record contained no details as to the circumstances of the April 1, 2017 incident, and, without those details, the court could not determine whether the prior incident was "substantially similar" to Roberts's accident. *See Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1323 (S.D. Fla. 2015) ("The 'mere implication of actual or constructive notice is insufficient to survive summary judgment'; rather, a

---

person tripped over the threshold between when the carpet was put in place and Roberts's accident on June 1, 2019.

plaintiff must show 'specific facts demonstrating, at least, that the purported defect was detectable with sufficient time to allow for corrective action.'" (quoting *Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1357 (S.D. Fla. 2013))).

Roberts argues on appeal that three pieces of evidence show Carnival had actual or constructive notice of the danger posed by the threshold at issue: (i) Vazquez's deposition and Carnival's meeting minutes, (ii) the 12 prior incidents involving the same threshold, and (iii) the fact that Carnival had previously provided warnings to passengers near similar thresholds. We disagree. None of this evidence, in our view, creates a triable issue of fact regarding Carnival's actual or constructive notice of dangers posed by the threshold at the time of Roberts's accident.

i.

First, Carnival's statements in the record show that it had notice in 2016 and 2017 of dangers relating to this threshold. Vazquez acknowledged this and said that Carnival took action to ameliorate that risk:

> I think initially when the ship was delivered and was sailing in Europe, there were a number of incidents that we recognized right away that were happening in that particular area, specifically deck 5 and the promenade. There's two specific fire safety doors in a high traffic area that were posing problems. So they filed a warranty claim.

> And then in the Fall of 2016, . . . the thresholds were replaced with different thresholds, which initially seemed to reduce the incidents to almost zero. But then after that, there were several other incidents that happened.
>
> And then in early 2017, it looks like they, with the new thresholds, also put down a carpet, which almost eliminated all of the incidents. So then in 2017, 2018, 2019, et cetera, the problem was almost a hundred percent resolved.

Carnival's March 2017 guest safety action plan for *Vista* similarly acknowledges "that thresholds in midship fire screen doors (Decks 5) are . . . currently one of the highest areas of trip and fall accidents and near misses onboard." The meeting minutes from July 28, 2017 and November 24, 2017 acknowledge the same, respectively stating that "deck 5 thresholds are still root causes of accidents" and "maybe we could install a small carpet next to the fire screen door threshold."[4]

These statements speak to Carnival's knowledge of the relevant threshold's dangerousness in 2016 and 2017—well before Roberts's accident on June 1, 2019. But no evidence exists of any accident involving this threshold in the 26 months between the April 1, 2017 incident and Roberts's accident on June 1, 2019. Moreover,

---

[4] Notably, the accident referenced in the November 24, 2017 meeting minutes concerns a different fire safety door threshold on deck 5.

the April 1, 2017 incident was the only incident that occurred after the threshold was replaced and after Carnival placed the red carpet next to the threshold. Accordingly, the district court rightly concluded that the record evidence did not show that there were substantially similar prior incidents and did not show that Carnival had notice of any dangers relating to the threshold under the conditions as they existed on June 1, 2019.

Roberts argues that Carnival's actions to remedy the danger posed by the threshold—*i.e.*, filing a warranty claim and placing a red carpet by the threshold—show that it had notice of the danger. *See Carroll*, 955 F.3d at 1265 ("Evidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition."). Yet Carnival took those actions in late 2016 and early 2017. These corrective measures show that Carnival had notice of the threshold's dangerousness in 2016 and 2017—not that it had notice two years later at the time of Roberts's accident. Roberts's argument implies that if a shipowner has acted at any point to resolve a safety risk, then it is on notice of that safety risk in perpetuity, regardless of whether the danger persisted. The record shows that Carnival reasonably believed that replacing the thresholds and placing a red carpet next to the threshold ameliorated any danger: after these two actions were taken, only one more person fell for two years, and Roberts failed to show that that incident was substantially similar.

ii.

Second, the 12 prior incidents involving the same threshold did not provide constructive notice because these incidents were not substantially similar to Roberts's accident. As noted, 10 of those incidents occurred in the second half of 2016 and the other two occurred on February 24 and April 1, 2017, respectively. Only the April 1, 2017 incident occurred after Carnival both replaced the thresholds and put down the red carpet. And, as the district court explained, the record contains no details concerning the circumstances of the April 1, 2017 incident, so we cannot conclude that this prior incident is "substantially similar" to Roberts's accident or that it was sufficient to provide Carnival notice of the threshold's dangerousness under the conditions as they existed on June 1, 2019.

Roberts argues that because her accident and the prior incidents "share the same cause"—*i.e.*, were caused by the same threshold—then they are substantially similar. *See Croskey v. BMW of N. Am., Inc.*, 532 F.3d 511, 518 (6th Cir. 2008) ("Substantial similarity means that the accidents must have occurred under similar circumstances or share the same cause."). We disagree. Roberts's accident and these prior incidents both involved the same threshold, but that does not necessarily mean they were substantially similar. *Cf. Sorrels*, 796 F.3d at 1287 (affirming the district court's finding that 22 prior slip and fall incidents over a four-year period were not substantially similar to the plaintiff's incident because "none of them occurred where [the plaintiff] fell," "most involved unknown wet substances" rather than rainwater, and "in

some of the other incidents there were other factors involved," such as playing table tennis or running around a pool).  Roberts contends that the Dreamscape lighting distracted her, which contributed to her accident, yet no evidence shows that the Dreamscape lighting contributed to any of these 12 prior incidents.  Moreover, 11 of the 12 incidents occurred under different circumstances—*i.e.*, before the thresholds were replaced and the red carpet was put down.

Roberts also argues that 10 other incidents involving a different deck 5 threshold "are similar enough to put Carnival on notice."  However, Roberts offers no details as to the circumstances of those other incidents, so we cannot determine whether they were substantially similar.  Moreover, given that no accident involving the threshold at issue occurred in the 26 months between the April 1, 2017 incident and Roberts's June 1, 2019 accident, the district court rightly determined that Carnival had no actual or constructive notice of this threshold's dangerousness at the time of Roberts's accident.

Roberts notes that, under this Circuit's precedent, "[t]he 'substantial similarity' doctrine does not require identical circumstances" but instead "allows for some play in the joints." *Sorrels*, 796 F.3d at 1287.  But neither we, nor the district court, have required identical circumstances.  Apart from identifying incidents involving the same threshold, Roberts has provided no evidence that the circumstances of her accident are substantially similar to any of the 12 prior incidents.  To the contrary, Carnival has shown

that 11 of those incidents occurred under notably different circumstances—namely, before Carnival had implemented two corrective measures. Accordingly, we cannot conclude that the district court erred by finding that these 12 prior incidents did not put Carnival on notice of the threshold's dangerousness.

### iii.

Third, the warnings and corrective measures Carnival contemplated putting into place in 2016 and 2017 do not show that it had actual or constructive notice of the threshold's danger at the time of Roberts's accident. Roberts contends that Carnival knew of the danger because it contemplated or tested a variety of corrective measures in 2016, such as "reflective tape to increase the visibility of the threshold," "black non-skid tape," and "silicone strips." Yet this shows Carnival's notice in 2016, not its notice at the time of Roberts's accident. As Vazquez explained in her deposition, when Carnival "put the carpet down, [it wasn't] sure that it was going to work," but, after placing the carpet next to the threshold, Carnival "recognized . . . that the carpet worked perfectly" and that "[i]t was the perfect simple solution." Because Carnival's corrective measures all but eliminated the accidents involving this threshold, the district court correctly concluded that the mere fact it had attempted other corrective measures nearly 3 years earlier did not put it on notice of the threshold's dangerousness in June 2019.

Because we agree with the district court that Carnival lacked actual or constructive notice of the dangers posed by the threshold, Roberts cannot maintain a negligence claim against Carnival for

16                    Opinion of the Court                    21-11792

either failure to warn passengers about, or remedy, the threshold.[5]
*See Keefe*, 867 F.2d at 1322 (stating that a showing that the carrier
"had actual or constructive notice of the risk-creating condition" is
"a prerequisite to imposing liability" and that the carrier's liability
"hinges on whether it knew or should have known about the" al-
legedly dangerous condition).   Given that Roberts has not pre-
sented a triable issue of fact regarding Carnival's knowledge of the
threshold's danger at the time of her accident, she cannot satisfy
the duty element of her negligence claim.[6]

B.      *The record evidence does not create a triable issue of fact*
        *over whether Carnival participated in, or approved of, the*
        *threshold's design.*

        Roberts also presented a strict products liability claim
against Carnival for negligent design and installation of the thresh-
old.  The district court determined that no evidence showed that
Carnival created, participated in, or approved of the threshold's

---

[5] Roberts notes that she "pleaded several alternative theories of liability."  But
she does not identify any beyond failure to warn, failure to remedy, or negli-
gent design.  And, as the district court noted, several of the other alternative
theories identified in the amended complaint were conceded, withdrawn, or
lacked support in the record.  Accordingly, we have confined our discussion
in this opinion to the theories of liability specified and argued in Roberts's
opening brief.

[6] As stated, we need not reach the issue of whether the danger posed by the
threshold was open and obvious because we have concluded that Carnival
lacked actual or constructive notice of the threshold's dangerousness.

design. *Cf. Groves v. Royal Caribbean Cruises, Ltd.*, 463 F. App'x 837, 837 (11th Cir. 2012) (per curiam) (affirming summary judgment where "[t]he district court found that [the plaintiff] presented no evidence that [the carrier] actually created, participated in, or approved the alleged negligent design of these areas near the dining room where [the plaintiff] was injured"). Roberts's claim appears to hinge entirely upon Carnival's filing of a warranty claim to replace the threshold at issue. Roberts contends that Carnival's acceptance of *Vista* after those repairs were made constitutes approval of the threshold's design.

We agree with the district court that "the mere fact that [Carnival] submitted the *Vista* to Fincantieri for a 'warranty claim' to modify the subject threshold, and subsequently received the vessel with a modified threshold, does not create an issue of fact as to whether they created, participated in, or approved an alleged improper design." Carnival's corporate representative testified that, "[w]ith respect to the fire safety doors and the threshold, Carnival does not participate in any way in the design or manufacture of those thresholds." Roberts's inference that Carnival's acceptance of *Vista* after Fincantieri modified the threshold constitutes participation in the design of the threshold cannot overcome this clear statement to the contrary.

The cases Roberts cites do not persuade us otherwise. In one case, the carrier's corporate representatives testified that the carrier made decisions regarding the design of the entrance to the cruise ship. *See, e.g.*, *Fylling v. Royal Caribbean Cruises, Ltd.*, No.

18-CV-21953, 2019 WL 8275158, at *4 (S.D. Fla. Dec. 10, 2019) ("The incline at the entranceway of the *Harmony* was part of Royal Caribbean's vessel design . . . ."). In another case, the corporate representative "skirted around providing a direct answer as to whether [the carrier] approved the design in question." *Hoover v. NCL (Bahamas) Ltd.*, 491 F. Supp. 3d 1254, 1257 (S.D. Fla. 2020). In the final case, the corporate representative "testified that internal management within Defendant's organization was 'very involved' with 'the basic strategies, vision, or pursuit of innovation' as it dealt with the design of the *Voyager* class of vessels." *Whelan v. Royal Caribbean Cruises Ltd.*, No. 1:12–cv–22481–UU, 2013 WL 5583970, *4 (S.D. Fla. Aug. 14, 2013). In contrast, Carnival's corporate representative stated, unequivocally, that "Carnival does not participate in any way in the design or manufacture of those thresholds."

Unlike the contrary or hesitant statements in the above-cited cases, Vazquez's statement here does not create a triable issue of fact as to whether Carnival actually participated in, or approved of, the threshold's design. *Cf. Diczok v. Celebrity Cruises, Inc.*, 263 F. Supp. 3d 1261, 1264 (S.D. Fla. 2017) (granting summary judgment, in part, to the carrier where the corporate representative's statements showed only the carrier's "*ability* to participate in and approve the design of the Lounge" but did "not show *actual* participation or approval").

For the foregoing reasons, the district court's grant of summary judgment to Carnival is

**AFFIRMED.**